UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LING LA,

          Plaintiff,

    v.

SAN MATEO COUNTY TRANSIT
DISTRICT, et al.,

          Defendants.

Case No.  14-cv-01768-WHO

**ORDER ON MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

Re: Dkt. No. 21

## INTRODUCTION

Plaintiff Ling La alleges that defendant San Mateo County Transit District ("SamTrans") fired her because, between November 2012 and July 2013, she repeatedly complained to coworkers, superiors and outside authorities about accounting irregularities she suspected were taking place within SamTrans.  She brings four causes of action against SamTrans and two individual defendants: (1) retaliation in violation of California Labor Code section 1102.5(b); (2) retaliation in violation of 42 U.S.C. § 1983 and the First Amendment; (3) deprivation of substantive due process in violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments; and (4) retaliation in violation of the California False Claims Act.  SamTrans has moved to dismiss all causes of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  For the reasons discussed below, SamTrans's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

## I.     FACTUAL BACKGROUND

The following facts are based on the allegations in La's first amended complaint ("complaint" or "FAC") and are presumed true for the purposes of this motion.  La was hired by SamTrans as a Senior Accountant on May 22, 2011.  FAC ¶ 12 (Dkt. No. 19).  On February 4,

United States District Court
Northern District of California

1   2012, she was transferred from SamTrans's Treasury Division to its General Ledger and Accounts

2   Payable Division.  FAC ¶ 14.  Between August 2012 and October 2012, she discovered irregularly

3   high freight charges on invoices from SamTrans's Parts and Inventory Department.  FAC ¶ 15.

4   She investigated the charges and came to suspect they were due to collusion between Glenda

5   Vierra, who worked for SamTrans as a "buyer," and the third-party vendors from whom Vierra

6   ordered parts.[1]  FAC ¶ 16.  La suspected that Vierra had the authority both to place orders for parts

7   and to approve invoices for the same orders.  FAC ¶ 16.  She identified this as a weakness in

8   SamTrans's internal control policies and requested that third-party vendors begin providing proof

9   of freight charges.  FAC ¶ 16.

10      Upon learning of La's investigation, Vierra became upset and reported to La's supervisor,

11  defendant Sheila Tioyao, that La had previously approved an invoice which short-paid a $15.00

12  freight charge.  FAC ¶ 17.  On or around November 5, 2012, La sent an email to Vierra, Tioyao,

13  and David Olmeda requesting that Vierra stop defaming her in the workplace.  FAC ¶ 18.

14  Approximately two weeks later, Tioyao issued La a counseling memo reprimanding La for using

15  an "inappropriate tone" with coworkers.  FAC ¶ 19.

16      On or around December 10, 2012, La filed two complaints with Monica Colondres,

17  SamTrans's Human Resources Director.  FAC ¶ 20.  In the complaints, La asserted that Vierra and

18  Tioyao's actions constituted whistleblower retaliation.  FAC ¶ 20.  The complaints were

19  eventually resolved without any finding of wrongdoing by Vierra or Tioyao.  FAC ¶ 38.

20      On February 4, 2013, Tioyao asked La to categorize an expense from fiscal year 2013 as

21  an expense from fiscal year 2011.  FAC ¶ 21.  On February 14, 2013, La informed Tioyao that

22  categorizing the expense as a fiscal year 2011 expense was "wrong" and in violation of Generally

23  Accepted Accounting Principles ("GAAP").  FAC ¶ 22.  Approximately six weeks later, on March

24  25, 2013, Tioyao gave La a negative performance review, a "Performance Improvement Plan,"

25  and a six-month probation.  FAC ¶ 23.  La filed a new complaint with Monica Colondres the next

26

27  _____
    [1] La does not explain what it means to be a "buyer" for SamTrans.  FAC ¶ 16-17.  La's allegations

28  suggest that Vierra's job was to purchase parts for SamTrans from third-party vendors. *See id.*

2

1  day.  FAC ¶ 24. La also submitted complaints to three other SamTrans employees.  FAC ¶ 24.

2  The complaints concerned the prior actions of Vierra and Tioyao, the negative performance

3  review, and the "Performance Improvement Plan."  FAC ¶ 24.  The complaints were all eventually

4  resolved without any finding of wrongdoing.  FAC ¶ 40.

5  La met with Colondres on April 4, 2013 to discuss "the ongoing fraud, nepotism, and

6  waste she had observed within SamTrans."  FAC ¶ 25.  When Colondres asked La about specific

7  instances of misconduct and the identities of the individuals involved, La requested to have her

8  attorney present, but Colondres refused.  FAC ¶ 25.

9  On or around April 8, 2013, La sent an email to Colondres and SamTrans attorneys David

10  Miller and Diane O'Malley.  FAC ¶ 26.  In the email, La reported Tioyao's request in February

11  2013 that La categorize a fiscal year 2013 expense as a fiscal year 2011 expense.  FAC ¶ 26.  On

12  or around April 9, 2013, La met with Colondres a second time and disclosed to her the identities

13  of the individuals involved in "the invoicing and accounting irregularities."  FAC ¶ 27.

14  On April 9 and 12, 2013, La reported "excessive payments" made during the previous year

15  to "Karen Antion, S3 Jensen and Wipro."[2]  FAC ¶ 27.  La also reported that Antion "was neither

16  reporting payroll…nor was issued an [IRS Form] 1099 by SamTrans for substantial sums billed

17  to…SamTrans, in violation of multiple federal statutes and regulations," including the Davis-

18  Bacon Act, related federal statutes, and regulations implementing the Act and statutes.  FAC ¶ 29.

19  La alleges that certain of the excessive payments she reported on April 9 and 12, 2013 were made

20  "without a proper approval/purchase order or work directive process" and "did not comply with

21  applicable law and accounting principles requiring separation of contract approval and purchase

22  order or work approvals, resulting in misleading and incorrect audit information."  FAC ¶ 28.  She

23  also alleges that the misconduct she reported on April 9 and 12, 2013 "violated not only [GAAP],

24  but federal regulation[s] and statutes by issuing payments without proper documentation or

25  approval, using federal grant dollars without proper documentation or approval, [and] using

26  federal grant dollars without reasonable and generally accepted mechanisms in place for

27  

28  [2] La does not identify to whom she made these reports.

3

1    accountability and audit." FAC ¶ 34.

2        On or around April 10, 2013, La forwarded to Colondres and Diane O'Malley an email

3    from David Ramires to La. FAC ¶ 35. The email described "ongoing fiscal accounting

4    irregularities and violations of GAAP," including the existence of "a slush fund, far in excess of

5    any board-approved fund," with funds accumulated "using the improper accrual of fake expenses."

6    FAC ¶¶ 35-37.

7        On or around June 14, 2013, La notified defendant Michael Scanlon, SamTrans's General

8    Manager/CEO, of the misconduct she had observed at SamTrans. FAC ¶ 39. Scanlon responded

9    three days later with an email advising La to continue speaking with the Human Resources

10   Department about her concerns. FAC ¶ 40.

11       On or around July 2, 2013, La contacted the San Mateo County Whistleblowing Hotline

12   and "reported the fraud." FAC ¶ 42. The next day, Carol Groom, a San Mateo County Supervisor,

13   informed La that Groom had spoken with SamTrans and that La should continue to work with

14   SamTrans's Human Resources Department. *Id.*

15       On or around July 3, 2013, La contacted the San Mateo County District Attorney's Office

16   to file an official complaint. She provided information regarding "the questionable invoices" and

17   "the extreme excesses in [SamTrans's] contingency fund." FAC ¶ 44.[3] On the same date, La

18   approached Vicki Nguyen, a reporter for NBC Bay Area News, "to expose the mismanagement

19   and wrongdoings of SamTrans." FAC ¶ 44. On or around July 6, 2013, La sent an email to the

20   San Mateo County Controller's Office, the San Mateo County Board of Supervisors, and a civil

21   grand jury "complaining about [the County's] whistleblowing process." FAC ¶ 46.

22       On or around July 24, 2013, NBC reporters contacted SamTrans to schedule an interview

23   about "the fraud allegations." FAC ¶ 47. Around this time, Vicky Nguyen informed Scanlon that

24   she intended to attend SamTrans's board meeting on August 1, 2013. FAC ¶ 48. SamTrans

25   security personnel were subsequently instructed to contact the police if reporters arrived at the

26

27   [3] La alleges that SamTrans's contingency fund should have a balance equal to ten percent of
     SamTrans's annual operating budget, and that in 2013, the contingency fund's balance was
28   approximately $17 million. FAC ¶ 45. La does not allege either SamTrans's annual operating
     budget for 2013 or whether $17 million was more or less than that figure.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  board meeting.  FAC ¶ 48.  La alleges that around this time, she became aware that SamTrans was

2  surveilling her.  FAC ¶ 49.  La believes the surveillance "was based on the fear that she would

3  allow the reporters to enter" the August 1, 2013 board meeting.  FAC ¶ 49.

4          On July 31, 2013, La received a Notice of Intent to Terminate.  FAC ¶ 51.  La alleges she

5  was terminated pursuant to SamTrans's "policy and/or custom of terminating the employment of

6  SamTrans employees who report suspected financial irregularities, fraud, waste, and abuse."  FAC

7  ¶ 51.  La identifies one other SamTrans employee terminated pursuant to this policy/custom:

8  Linda MacIntyre, who La alleges was terminated after she "questioned the appropriateness of the

9  Antion invoices to her superior Sherry Bullock."  FAC ¶ 53.  La alleges in the alternative that

10 Scanlon "is the ultimate policymaker in terms of the handling of internal whistleblower complaints

11 and the continued employment of employees making whistleblowing complaints."  FAC ¶ 54.

12 **II.     PROCEDURAL BACKGROUND**

13         La filed her original complaint in this action on April 16, 2014.  Dkt. No. 1.  SamTrans

14 responded with a motion to dismiss under Rule 12(b)(6) on June 9, 2014.  Dkt. No. 10.  On July 8,

15 2014, rather than oppose the motion, La filed her first amended complaint, alleging four causes of

16 action: (1) retaliation in violation of California Labor Code section 1102.5(b); (2) retaliation in

17 violation of 42 U.S.C. § 1983 and the First Amendment; (3) deprivation of substantive due process

18 in violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments; and (4) retaliation in

19 violation of the California False Claims Act.  FAC ¶¶ 55-94.  The first and fourth causes of action

20 are alleged only against SamTrans; the second and third are alleged against all defendants.  *Id.*  On

21 July 22, 2014, SamTrans once again moved to dismiss under Rule 12(b)(6) for failure to state a

22 claim.  Mot. 1 (Dkt. No. 21).  I heard argument on the motion on September 10, 2014.

23                                    **LEGAL STANDARD**

24         A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

25 sufficiency of a complaint.  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).  A complaint

26 "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

27 on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation

28 omitted).  A claim is facially plausible when it "allows the court to draw the reasonable inference

United States District Court
Northern District of California

that the defendant is liable for the misconduct alleged." *Id.* In considering whether the complaint is sufficient to state a claim, the court accepts as true all factual allegations contained in the complaint. *Id.* However, the court need not accept as true allegations that contradict matters properly subject to judicial notice or presented by exhibit. *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

## DISCUSSION

### I.   INITIAL MATTERS

#### A.  Failure to Oppose

SamTrans argues that because La's opposition fails to address legal arguments raised by SamTrans with respect to each of La's causes of action, I should grant SamTrans's motion as unopposed and dismiss La's complaint with prejudice. Reply 2-3 (Dkt. No. 26). SamTrans relies primarily on *Lepp v. Gonzales*, No. 05-cv-0566-VRW, 2005 WL 1867723 (N.D. Cal. Aug. 2, 2005), for this argument. In *Lepp*, defendants moved to dismiss all seven causes of action alleged by plaintiffs, yet in their opposition to the motion, plaintiffs defended only their first cause of action while "fail[ing] utterly to address…defendants' arguments regarding dismissal of the second through seventh." *Id.* at *4. The court concluded that plaintiffs' total failure to oppose was a "tactical litigation decision rather than a mistake" and dismissed the unopposed causes of action with prejudice. *Id.* at *5. Likewise, in *Qureshi v. Countrywide Home Loans*, Inc., No. 09-cv-4198-SBA, 2010 WL 841669 (N.D. Cal. Mar. 10, 2010), the court held that plaintiff's complete failure to defend several claims in his opposition to defendants' motion to dismiss constituted an "abandonment" of those claims. *Id.* at *6 n.2; *see also Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 (9th Cir. 2005) (noting that plaintiff abandoned claims not defended in opposition to motion for summary judgment).

La did not abandon her claims here. She includes arguments in her opposition regarding each of her four causes of action. *See* Opp. 10-12 (first), 5-7 (second), 7-9 (third), 9-10 (fourth). SamTrans is correct that her opposition leaves unaddressed several cogent legal arguments raised

1  in the motion to dismiss.  SamTrans is also correct that unlike the pro se plaintiffs in *Lepp*, La is

2  represented by counsel, meaning that her pleadings may properly be held to a higher standard.  *See*

3  *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to

4  construe pro se pleadings liberally, including pro se motions as well as complaints.").  But neither

5  of these facts requires me to dismiss La's complaint with prejudice and without considering its

6  merits.  To the extent SamTrans's motion to dismiss is based on a failure-to-oppose argument, the

7  motion is DENIED.

8        **B.  Judicial Notice**

9        SamTrans filed a request for judicial notice of excerpted portions of its "Personnel Policies

10  and Procedures Manual" ("PPPM").  Dkt. No. 23.  Under Federal Rule of Evidence 201, I may

11  "judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known

12  within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from

13  sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  SamTrans

14  contends its PPPM is a public record whose accuracy is not subject to reasonable dispute.  Dkt.

15  No. 23.

16        La has not opposed, or even addressed, SamTrans's request for judicial notice of the

17  PPPM.  Instead, she repeatedly cites to the PPPM in her opposition brief in support of her own

18  arguments.  *See* Opp. 4, 7-8.  I take this as a tacit admission from La that the PPPM is accurate,

19  and that she does not object to my considering it for the purpose of deciding this motion.

20  Accordingly, SamTrans's request for judicial notice of the excerpted portions of the PPPM is

21  GRANTED.

22  **II.    FIRST CAUSE OF ACTION: WHISTLEBLOWER RETALIATION IN**
23  **VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5(B)**

24        "Section 1102.5 is a whistleblower protection statute."  *Ferretti v. Pfizer Inc.*, No. 11-cv-

25  04486-KH, 2012 WL 3638541 at *5 (N.D. Cal. Aug. 22, 2012) (internal quotation marks omitted).

26  It prohibits employers from retaliating against employees for disclosing information "to a

27  government or law enforcement agency, or to a person with authority over the employee or

28  another employee who has the authority to investigate, discover, or correct the violation or

noncompliance,…if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation of or noncompliance with a [state] or federal rule or regulation." CAL. LAB. CODE § 1102.5. "To establish a prima facie case for retaliation under section 1102.5, an employee must show (1) that he engaged in protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action." *Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004). As the plain language of the statute indicates, "[p]rotected activity is the disclosure of or opposition to a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." *Edgerly v. City of Oakland,* 211 Cal. App. 4th 1191, 1199 (2012) (internal quotations marks and citations omitted).

SamTrans argues that La fails to state a claim under section 1102.5(b) because she has not alleged that she disclosed the violation of a specific statute, rule, or regulation. Mot. 16-18. La's complaint includes allegations that on different occasions she disclosed the following information to an appropriate agency or person:

1. Glenda Vierra had the authority both to place orders for parts and to approve invoices for those same orders. FAC ¶ 16.

2. Sheila Tiaoyao asked La to categorize a fiscal year 2011 expense as a fiscal year 2013 expense, in violation of GAAP. FAC ¶ 21.

3. "Excessive payments" were made to various parties. The excessive payments "did not comply with applicable law and accounting principles requiring separation of control approval and purchase order or work approvals." FAC ¶¶ 27-28.

4. "Karen Antion was neither reporting payroll…nor was issued an [IRS Form] 1099 by SamTrans for substantial sums billed to…SamTrans, in violation of multiple federal statutes and regulations," including the Davis-Bacon Act, related federal statutes, and related regulations "regarding contractors and subcontractors on public work[s] financed in whole or in part by loans or grants from the federal government." FAC ¶ 29.

5. The "excessive payments" and the conduct of Karen Antion "violated not only [GAAP], but federal regulation[s] and statutes by issuing payments without proper documentation or approval, using federal grant dollars without proper

8

documentation or approval, [and] using federal grant dollars without reasonable and generally accepted mechanisms in place for accountability and audit." FAC ¶ 34.

6. The existence of "a slush fund, far in excess of any board-approved fund," with funds accumulated "using the improper accrual of fake expenses." FAC ¶¶ 35-37.

7. The existence of "extreme excesses in [SamTrans's] contingency fund." FAC ¶ 44.

La also broadly alleges that she "reasonably believed she had evidence of an ongoing fraudulent scheme in violation of federal or state law perpetrated by SamTrans agents," and that she "repeated[ly] attempted to notify Colondres and Scanlon of fraudulent conduct within SamTrans."[4] FAC ¶¶ 60, 62.

Although there is some split of authority, the majority of courts require plaintiffs bringing section 1102.5(b) claims to allege the specific rule, regulation or statute they reasonably believed had been violated, and the factual basis for their reasonable belief. *See Love*, 309 F. Supp. 2d at 1135 ("Plaintiff does not cite any statute, rule, or regulation that may have been violated by the disclosed conduct. Rather, he argues simply that he reasonably believed that the activity violated some unnamed statute, rule, or regulation."); *Layton v. Terremark N. Am., LLC*, No. 13-cv-03093-PSG, 2014 WL 2538679 at *3 (N.D. Cal. June 5, 2014) ("[Plaintiff] must be able to identify a specific state or federal statute, rule, or regulation which he believed Defendants were violating."); *Dauth v. Convenience Retailers, LLC*, No. 13-cv-00047-MEJ, 2013 WL 5340396 at *2 (N.D. Cal. Sept. 24, 2013) ("Plaintiff must specify the law, rule, or regulation that supports her claim."); *Thomsen v. Sacramento Metro. Fire Dist.*, No. 09-cv-01108, 2009 WL 8741960 at *16 (E.D. Cal.

---

[4] La further alleges that SamTrans regularly receives federal funds, including funds under the Intermodal Surface Transportation Efficiency Act of 1991 and the Transportation Equity Act for the 21st Century. FAC ¶ 30. As a recipient of these federal funds, La alleges, SamTrans is subject to federal statutes and regulations which require "full and open competition," 49 U.S.C. § 5325(a); 49 C.F.R. 18.36(c)(1), and prohibit both "arbitrary decisions," 49 C.F.R. 18.36(c)(1)(vii), and "exclusionary or discriminatory specifications," 49 U.S.C. § 5325(h). FAC ¶ 31. The problem with these allegations is that La fails to draw any connection between the cited statutes and regulations and the misconduct she allegedly disclosed. In other words, La fails to allege that she disclosed violations of these laws, as is required to state a claim under section 1102.5(b). *Edgerly*, 211 Cal. App. 4th at 1199.

1    Oct. 20, 2009) ("[I]t is unclear from the face of the complaint what state or federal statute

2    was…violated.  Further, the factual basis for these violations is unclear."); *but see Madrid v. Cnty.*

3    *of Mono*, No. 13-cv-01715, 2014 WL 2889910 at *5-6 (E.D. Cal. June 25, 2014) (plaintiff alleging

4    that he disclosed the falsification of police reports was not required to identify the violation of a

5    specific law to state a claim under section 1102.5(b)).

6          La has not satisfied this requirement.  In most instances, La completely fails to connect the

7    misconduct she allegedly disclosed to a specific rule, regulation or statute.  *See, e.g.,* FAC ¶¶ 16,

8    34-37, 44.  In other instances, La connects her disclosures to rules that are insufficient to support a

9    whistleblower retaliation claim under section 1102.5(b).  La alleges she disclosed violations of

10   GAAP on multiple occasions.  *See, e.g.*, FAC ¶¶ 26, 34.  However, GAAP regulations do not

11   equate to state or federal statutory or regulatory law.  *Dauth,* 2013 WL 5340396 at *5-6.  Courts

12   have recognized that GAAP does not define "a rigid set of inflexible rules," but a "range of

13   acceptable procedures [that] an accountant may choose to apply."  *Reiger v. Altris Software, Inc.*,

14   98-cv-00528, 1999 WL 540893 at *6 (S.D. Cal. Apr. 30, 1999); *see also, Dauth*, 2013 WL

15   5340396 at *5-6.  La provides no authority indicating that a violation of GAAP, standing alone,

16   constitutes a violation of a federal or state rule, regulation or statute.  Absent such authority, La's

17   allegations that she disclosed GAAP violations are not enough to support a claim under section

18   1102.5(b).

19         La's allegation that she disclosed conduct in violation of the Davis-Bacon Act, related

20   federal statutes, and related regulations is also insufficient.  The point of notice pleading is to

21   "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl.*

22   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  La's citation to a whole statutory framework does

23   not serve this purpose, in particular where La does not use her opposition brief to clarify the

24   specific statutes and regulations that were violated.  La's first cause of action is DISMISSED

25   WITH LEAVE TO AMEND.

26   **III.    SECOND CAUSE OF ACTION:  FIRST AMENDMENT RETALIATION (29 U.S.C.**
         **§ 1983)**

27

28         Under section 1983, "every person who, under color of any statute, ordinance, regulation,

United States District Court
Northern District of California

custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 29 U.S.C. § 1983.  Retaliation in the employment context is actionable under section 1983 when it is in response to First Amendment activity by the plaintiff.  *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).  To state a claim against a government employer for First Amendment retaliation, an employee must show:  "(1) that he or she engaged in protected speech; (2) that the employer took adverse employment action; and (3) that his or her speech was a substantial or motivating factor for the adverse employment action." *Id.* (internal quotation marks and citations omitted).

Where, as here, the defendant is a municipality or municipal body, the plaintiff has an additional burden.  In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local government bodies may only be held liable under section 1983 where the constitutional violation was caused by the municipality's policy, custom, or practice.  *Id.* at 690-91.  "[I]t is not enough for a section 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (internal quotation marks and citations omitted).  *Monell* limits municipal liability to instances where the plaintiff's claims are based upon one of three theories:  (1) that the alleged constitutional injury was "committed…pursuant to a formal governmental policy or a longstanding practice or custom;" (2) "that the individual who committed the constitutional tort was an official with final policymaking authority;" or (3) "that an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks and citations omitted).

Previously, the rule in the Ninth Circuit was that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing

11

United States District Court
Northern District of California

1    more than a bare allegation that the [complained of] conduct conformed to official policy, custom,

2    or practice." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)

3    (internal quotation marks and citation omitted).  Since the Supreme Court's decisions in *Twombly*

4    and *Iqbal*, however, courts in this circuit have moved away from this lax standard.  *See Cuviello v.*

5    *City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1090 (N.D. Cal. 2013); *Howard v. Contra*

6    *Costa Cnty.*, 13-cv-03626-NC, 2014 WL 824218 at *14 (N.D. Cal. Feb. 28, 2014).  The Ninth

7    Circuit has made clear that claims of *Monell* liability must now comply with the basic principles

8    set forth in *Twombly* and *Iqbal*: (1) the complaint "may not simply recite the elements of a cause

9    of action, but must contain sufficient allegations of underlying facts to give fair notice and to

10   enable the opposing party to defend itself effectively;" and (2) the "factual allegations that are

11   taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the

12   opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v.*

13   *Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666

14   F.3d 631, 636-37 (9th Cir. 2012).

15         SamTrans argues La's second cause of action must be dismissed because La fails to plead

16   *Monell* liability.  Mot. 11-16.  The only adverse employment action that La alleges occurred as a

17   result of a policy, custom, or final policymaker's conduct is her termination.  FAC ¶¶ 51-54, 69-

18   81.  She states that SamTrans terminated her "pursuant to [its] policy and/or custom of

19   terminating…employees who report suspected financial irregularities, fraud, waste and abuse."

20   FAC ¶ 51.[5]  SamTrans characterizes this as a conclusory statement insufficient to support a section

21   1983 claim against a municipal entity.  Mot. 13.

22         In *A.E. ex rel. Hernandez v. County of Tulare*, the Ninth Circuit considered a *Monell* claim

23   _____

24   [5] La also states that SamTrans's "custom of terminating employees who exercise their First
     Amendment right to speak concerning fraud, waste, and abuse in a public entity such as

25   [SamTrans] is deliberate conduct [and] the moving force behind [La's] termination."  FAC ¶ 52.
     This allegation is little more than a legal conclusion and does not provide meaningful support for

26   La's First Amendment retaliation claim.  *See Haines v. Brand*, No. 11-1335-EMC, 2011 WL
     6014459 at *6 (N.D. Cal. Dec. 2, 2011) (denying motion to dismiss *Monell* claim despite

27   plaintiff's failure to include certain "boilerplate language" because "under *Iqbal* such conclusory
     language would arguably not add much, if any, substance to the current complaint").

28

United States District Court
Northern District of California

brought by a minor who had been sexually abused while in foster care.  666 F.3d at 634-35.  He

alleged the county was liable under *Monell* because it "performed all acts and omissions…under

the ordinances, regulations, customs, and practices of [the county]" and "maintained or permitted

an official policy, custom, or practice of knowingly permitting the occurrence of the type of

wrongs" alleged elsewhere in the complaint.  *Id.* at 637.  The court concluded these allegations

were insufficient to state a claim, although it directed the district court to allow the plaintiffs leave

to amend.  *Id.* at 637-38.  In line with *A.E.*, courts in this circuit have generally dismissed *Monell*

claims that fail to identify the specific content of the municipal entity's alleged policy or custom.

*See, e.g., Howard*, 2014 WL 824218 at *14 (dismissing claim that county had policy or custom of

failing to properly train employees where "the complaint does not identify what the training

practices were, or how they were deficient); *Mendy v. City of Fremont*, No. 13-cv-04180-MMC,

2014 WL 574599 at *3 (N.D. Cal. Feb. 12, 2014) (dismissing municipal liability claim based on

unsupported allegation of an "informal custom or policy that tolerates and promotes the continued

use of excessive force and cruel and unusual punishment against and violation of civil rights of

citizens by City police officers in the manner alleged [elsewhere in the complaint]"); *Brown v.

Contra Costa Cnty.*, No. 12-cv-01923-PJH, 2012 WL 4804862 at *12 (N.D. Cal. Oct. 9, 2012)

(plaintiff failed to state municipal liability claim where he alleged only that the actions of the

individual defendants "(1) were caused by customs or policies of the District Attorney's Office;

(2) were caused by deliberate indifference of the District Attorney's Office; and/or (3) were

ratified by the final decisionmakers of the District Attorney's Office").

On the other hand, courts in this circuit have upheld *Monell* claims that succeed in alleging

a specifically identifiable policy or custom.  In *Mateos-Sandoval v. Cnty. of Sonoma*, 942 F. Supp.

2d 890 (N.D. Cal. 2013), the court held the plaintiffs had stated a claim for *Monell* liability by

alleging the county defendants "routinely enforce" a particular provision of the California Vehicle

Code by:

> seizing and impounding vehicles on the basis that the driver does not have a
> current, valid California driver's license, including when the vehicle was not
> presenting a hazard or a threat to public safety; keeping the vehicle [even though]
> someone was available to pay the impound fee to date, usually for the 30 day
> period specified by [the provision]; seizing and impounding vehicles even though

the driver has previously been licensed, whether in California or a foreign jurisdiction; failing and refusing to [provide] a hearing on the justification for impounding the vehicle for 30 days; failing and refusing to provide notice of the reason for impounding the vehicle for 30 days; and, on information and belief, charging an above-cost administrative fee.

*Id.* at 899-900.  The court distinguished *A.E.* on the ground that the plaintiffs' allegations, "in contrast those offered by the plaintiffs in *A.E.,* specify the content of the policies, customs, or practices the execution of which gave rise to [their] Constitutional injuries." *Id.* at 899.  Similarly, in *Solis v. City of Vallejo*, No. 14-cv-00483, 2014 WL 2768847 (E.D. Cal. June 18, 2014), the court held the plaintiff had stated a *Monell* claim by alleging "it was the policy, practice and custom of [the county] to violate the Fourth Amendment" by "entering private residences without a warrant and without exigent circumstances; pointing firearms at residents, in their own home, and who were cooperating with officer commands; detaining residents without the requisite cause; and using unreasonable, unjustified, and/or excessive force." *Id.* at *2.

While La's policy or custom allegation is not a model of specificity, it is substantially more definite than the allegations dismissed in *A.E.  See* 666 F.3d at 637-38.  La does not merely allege that SamTrans has a policy or custom of performing various wrongs alleged elsewhere in her complaint.  Rather, La alleges that SamTrans has a policy or custom of performing a specific adverse employment action (termination) against a particular subset of employees (those who report internal misconduct).  *See* FAC ¶ 51.  Viewed in combination with the other allegations in the complaint – including the allegation that another SamTrans employee, Linda MacIntyre, was also terminated for questioning SamTrans's accounting practices, *see* FAC ¶ 53 – La has alleged enough to provide SamTrans with fair notice and the ability to effectively defend itself, and to state a plausible claim for relief under *Monell*.  *See Starr*, 652 F.3d at 1216.

SamTrans's argument that La must allege more than two incidents of whistleblowing employees being terminated pursuant to the alleged policy or custom is incorrect because this rule applies only to unconstitutional *custom* allegations, not unconstitutional *policy* allegations. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.

1    1996).  However, where *Monell* liability is based not on improper custom, but on improper policy,

2    the plaintiff is not required to present evidence of more than one constitutional transgression.  *See*

3    *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of

4    unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the

5    incident includes proof that it was caused by an existing, unconstitutional municipal policy, which

6    policy can be attributed to a municipal policymaker."); *see also Meehan v. Cnty. of Los Angeles*,

7    856 F.2d 102, 107 (9th Cir. 1988) (same).  The upshot is that although La may not have stated a

8    claim based on unconstitutional custom, she has alleged sufficient facts to support a *Monell* claim

9    based on unconstitutional policy.

10        SamTrans makes no arguments regarding La's First Amendment retaliation claim except to

11   contend she fails to plead *Monell* liability.  Accordingly, SamTrans's motion to dismiss the second

12   cause of action is DENIED insofar as the second cause of action is based on La's allegation that

13   SamTrans terminated her "pursuant to [its] policy…of terminating…employees who report

14   suspected financial irregularities, fraud, waste and abuse."  FAC ¶ 51.

15

16   **IV.    THIRD CAUSE OF ACTION: DEPRIVATION OF DUE PROCESS IN**
         **VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS (29 U.S.C. §**
17        **1983)**

18        La's third cause of action alleges violations of the Fifth and Fourteenth Amendments.

19   FAC ¶¶ 82-89.  She asserts that SamTrans deprived her of a property interest in violation of the

20   Fifth Amendment, and that SamTrans's conduct "constituted retaliatory, arbitrary and capricious

21   action," in violation of the substantive due process guarantees of the Fourteenth Amendment.

22   FAC ¶¶ 85-86.[6]  The only specific conduct alleged under this cause of action is La's termination.

23   _____

24   [6] In her opposition, La attempts to add a procedural due process claim to her third cause of action.
     *See* Opp. 9 ("Plaintiff can allege violations of her procedural due process rights.").  La did not
25   include this allegation in her complaint. *See* FAC ¶ 82-89.  "It is axiomatic that the complaint may
     not be amended by the briefs in opposition to a motion to dismiss."  *Car Carriers, Inc. v. Ford*
26   *Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).  I will not consider La's procedural due process
     claim here. *See Lepp*, 2005 WL 1867723 at *2 ("[T]o the extent the opposition attempts to state a
27   new cause of action…, such an amendment to the complaint is procedurally improper and…will
     not be addressed herein.").

28

United States District Court
Northern District of California

1    FAC ¶ 85.  Elsewhere in the complaint, La asserts that she had successfully completed her

2    probationary period at SamTrans, and that under California law, she "had a constitutionally

3    protected fundamental property right in continued employment."  FAC ¶¶ 13, 75.

### A.  Fifth Amendment

5        "The Due Process Clause of the Fifth Amendment…appl[ies] only to actions of the federal

6    government – not to those of state or local governments."  *Lee v. City of Los Angeles*, 250 F.3d

7    668, 687 (9th Cir. 2001).  La has not alleged that SamTrans is a federal actor or provided any

8    justification for enforcing the Fifth Amendment against an entity which La identifies in her

9    complaint as a "local governing agency."  FAC ¶ 2.  La's Fifth Amendment claim is DISMISSED

10   WITH PREJUDICE.

### B.  Fourteenth Amendment

12       The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty,

13   or property, without due process of law."  U.S. Const. amend. XIV § 1.  "[S]ubstantive due

14   process…forbids the government from depriving a person of life, liberty or property in such a way

15   that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."

16   *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (internal quotation marks and

17   citations omitted).  "To establish a substantive due process claim, a plaintiff must, as a threshold

18   matter, show a government deprivation of life, liberty, or property."  *Id.*  Property interests are

19   created not by the federal constitution, but by state law.  *Bd. of Regents of State Colleges v. Roth*,

20   408 U.S. 564, 577 (1972).  Under California law, "a public employee…who can establish the

21   existence of rules and understandings, promulgated and fostered by state officials, that justify her

22   legitimate claim to continued employment absent sufficient cause, has a property interest in such

23   continued employment."  *McGraw v. City of Huntington Beach*, 882 F.2d 384, 389 (9th Cir.

24   1989).  "California courts have also recognized that public employees who have completed their

25   probationary period ordinarily have a legitimate claim of entitlement, and thus a property right, to

26   continued public employment."  *Id.*  The phrase "legitimate claim" in this context is synonymous

United States District Court
Northern District of California

United States District Court
Northern District of California

1   with "reasonable expectation." *Id.* at 390-91.

2          SamTrans argues that La fails to state a substantive due process claim under the Fourteenth

3   Amendment because she did not have a property interest in her job.  Mot. 10-11; Reply 7-9.

4   SamTrans points to its PPPM, which states that "[e]mployees serve at the pleasure of the General

5   Manager/CEO and can be discharged at any time, without prior notice, with or without cause."

6   Atencio Decl. Ex. A § 30.  Under California law, an employee "serving at the pleasure" is an "at-

7   will employee who can be fired without cause," *Hill v. City of Long Beach*, 33 Cal. App. 4th 1684,

8   1693, 40 Cal. Rptr. 2d 125 (1995), and a public at-will employee has "no constitutionally

9   protected property interest in continued employment."  *Binkley v. City of Long Beach,* 16 Cal.

10  App. 4th 1795, 1808, 20 Cal. Rptr. 2d 903 (1993).  In light of the PPPM, SamTrans contends, La

11  has not stated sufficient facts to support the plausible inference that she had a legitimate claim of

12  entitlement to continued employment.

13         As noted above, La does not dispute SamTrans's request for judicial notice of its PPPM.

14  Nor does La dispute her characterization as an at-will employee.  La argues instead that she has a

15  property interest in her job because SamTrans's PPPM "sets forth the specific procedures that

16  must be used prior to terminating a [SamTrans] employee's employment."  Opp. 7.  The

17  procedures to which La refers concern a "complaint procedure" which "[a]n employee may

18  use…when he or she believes an unfair or improper action has had direct and adverse effects upon

19  the employee."  Atencio Decl. Ex. A at § 31.  These procedures are not sufficient to endow La

20  with a property interest in her job.  "A guarantee of procedural fairness does not establish a

21  property interest." *Hayward v. Henderson*, 623 F.2d 596, 597 (9th Cir. 1980).  "A law establishes

22  a property interest in employment if it restricts the grounds on which an employee may be

23  discharged. For example, if discharge can only be for 'just cause,' an employee has a right to

24  continued employment until there is just cause to dismiss him." *Id.*  Nothing in the procedures

25  cited by La purports to restrict SamTrans's ability to terminate her "with or without cause."

26  Atencio Decl. Ex. A § 30.

27         Nevertheless, I conclude that at this early juncture, SamTrans's arguments do not compel

28  dismissal of the third cause of action.  La states that she was no longer a probationary employee

1    and that she had a property right in her continued employment.  FAC ¶¶ 13, 75.  SamTrans's

2    PPPM indicates that La was an at-will employee.  Atencio Decl. Ex. A § 30.  But this does not

3    necessarily mean that La lacked a "reasonable expectation" that she was entitled to her job.  Such

4    a "reasonable expectation" need not be based on formal rules or regulations; it may also be based

5    on informal "understandings…fostered by state officials."  *McGraw*, 882 F.2d at 389.  Moreover,

6    under California law, "public employees who have completed their probationary period ordinarily

7    have a legitimate claim of entitlement, and thus a property right, to continued public

8    employment."  *Id.* at 390.  That nonprobationary employees such as La ordinarily have a property

9    interest in their jobs provides additional support to the plausible inference that she possessed a

10   reasonable expectation that her job had matured into an entitlement.   On a motion to dismiss,

11   SamTrans's presentation of the PPPM, standing alone, is not enough to defeat La's claim that she

12   had a constitutionally protected property interest in her continued employment.  Once La has had

13   an opportunity to conduct discovery, SamTrans may revisit this issue on summary judgment.

14        SamTrans presents no other arguments for dismissal of La's Fourteenth Amendment claim.

15   Accordingly, with respect to the Fourteenth Amendment claim, SamTrans's motion to dismiss the

16   third cause of action is DENIED.

17   **V.     FOURTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE**
     **CALIFORNIA FALSE CLAIMS ACT**
18

19        Section 12653 of the California False Claims Act ("CFCA") "prohibits an employer from

20   discriminating against an employee for acts taken to expose false claims presented to the

21   government."  *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 447 (2013).  A

22   plaintiff alleging CFCA retaliation must show three elements: "(1) that he or she engaged in

23   activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected

24   activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in

25   protected activity."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir.

26   2008).   To show she engaged in protected activity, "[a]n employee does not have to file a false

27   claims action or show a false claim was actually made...However, the employee must have

28   reasonably based suspicions of a false claim and it must be reasonably possible for the employee's

United States District Court
Northern District of California

1    conduct to lead to a false claims action." *McVeigh*, 213 Cal. App. at 456 (internal quotation marks

2    and citations omitted).  "That a false claims action must be 'reasonably possible' simply means

3    that there must a reasonable basis for the employee's suspicion about fraud on the government –

4    not that actual grounds for a false claims action must have existed." *Id.* at 463.  Unlike CFCA

5    *violation* claims, which must satisfy the heightened pleading requirements of Federal Rule of Civil

6    Procedure 9(b), CFCA *retaliation* claims need only meet the Rule 8(a) notice pleading standard to

7    survive a Rule 12(b)(6) motion to dismiss.  *Mendiondo*, 521 F.3d at 1103.

8         La does not allege any specific conduct under this cause of action.  Instead, she makes a

9    series of broad assertions:  (1) that the "subjects of [her] complaints set forth above [–] i.e., fiscal

10   fraud and lack of compliance with statutes, the payment of improper invoices, and the creation of a

11   slush fund to cover payments for unapproved funds [–] harms [SamTrans];" (2) that she "had a

12   genuine and reasonable concern that the government was possibly being defrauded when she

13   engaged in protected conduct;" and (3) that her "protected activity was based on

14   fraudulent…requests or demands for money which were made to a contractor, grantee or other

15   recipient [and] that the government reimbursed such contractor, grantee, or other recipient for the

16   fraudulent demand."  FAC ¶¶ 91, 93-94.  These vague and largely boilerplate assertions are far too

17   conclusory to state a plausible claim for relief under CFCA.

18        In her opposition, La attempts to substantiate her CFCA allegations by citing to various

19   portions of the complaint.  Opp. 11.  But none of the cited-to portions provide support for a

20   reasonable inference that La engaged in protected activity under the statute.  *See* FAC ¶¶ 17-20,

21   21-22, 25-27, 35.  "The CFCA is violated when a person knowingly presents or causes to be

22   presented a false or fraudulent claim for payment or approval, or knowingly makes, uses, or causes

23   to be made or used a false record or statement material to a false or fraudulent claim."  *McVeigh*,

24   213 Cal. App. at 458.  Under CFCA, "claim" means:

25        any request or demand …for money…that meets either of the following
          conditions:
26

27        (A) Is presented to an officer, employee, or agent of the state or of a political
          subdivision.
28

19

(B) Is made to a contractor, grantee, or other recipient, if the money…is to be spent or used on a state or any political subdivision's behalf or to advance a state or political subdivision' s program or interest, and if the state or political subdivision meets either of the following conditions:

(i) Provides or has provided any portion of the money…requested or demanded.

(ii) Reimburses the contractor, grantee, or other recipient for any portion of the money…that is requested or demanded.

CAL. GOV. CODE § 12650(b)(1).

La fails to sufficiently describe any instance of alleged misconduct that would provide a "reasonable basis for [her] suspicion" of a false claim as defined by CFCA. *McVeigh*, 213 Cal. App. at 463. The closest La comes to doing so is not in the portions of the complaint she cites to, but in her allegation of suspected collusion between Glenda Vierra, the SamTrans "buyer," and the third-party vendors from whom Vierra ordered parts. *See* FAC ¶ 16. This allegation ultimately falls short, however, because La does not allege that she suspected either Vierra or the third-party vendors of making false claims. La merely alleges that she suspected that Vierra had the authority both to place orders for parts and to approve invoices for the same orders. FAC ¶ 16. That is enough to show La had a "reasonably based suspicion" of a weakness in SamTrans's internal control procedures, but it is not enough to show she had a reasonably based suspicion of fraud on the government.

To state a prima facie case for CFCA retaliation, La must allege a specific and reasonable basis for her suspicions of false claims against the government. *See Mendiondo*, 521 F.3d at 1104 (plaintiffs stated a prima facie case for CFCA retaliation where "the complaint contains examples of practices at [the defendant hospital] that [plaintiffs] suspected to be fraudulent attempts to inflate Medicare reimbursements: one doctor allegedly performed numerous unnecessary catheterizations; [the hospital] implanted single ventricular pacemakers, even when patients needed biventricular pacemakers; and [the hospital] kept patients on observation status or as inpatients, without regard to medical need and in violation of Medicare reimbursement guidelines"). La has not done so here. Accordingly, La's fourth cause of action is DISMISSED with leave to amend.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the reasons discussed above, IT IS HEREBY ORDERED:

1.  SamTrans's motion to dismiss the first cause of action, for violation of California Labor Code section 1102.5(b), is GRANTED.  The first cause of action is DISMISSED WITH LEAVE TO AMEND.

2.  SamTrans's motion to dismiss the second cause of action, for First Amendment retaliation, is DENIED insofar as La's second cause of action is based on the claim that SamTrans terminated La pursuant to SamTrans's "policy…of terminating…employees who report suspected financial irregularities, fraud, waste and abuse."  FAC ¶ 51.

3.  SamTrans's motion to dismiss the third cause of action, for deprivation of substantive due process in violation of the Fifth and Fourteenth Amendments, is GRANTED IN PART and DENIED IN PART.  Insofar as La's claims under the third cause of action are based on the Fifth Amendment, the motion to dismiss is GRANTED, and those claims are DISMISSED WITH PREJUDICE.  Insofar as La's claims under the third cause of action are based on the Fourteenth Amendment, the motion to dismiss is DENIED.

4.  SamTrans's motion to dismiss the fourth cause of action, for violation of the California False Claims Act, is GRANTED.  The fourth cause of action is DISMISSED WITH LEAVE TO AMEND.

5.  Any amended complaint shall be filed within 20 days of this order.

**IT IS SO ORDERED**.

Dated: September 16, 2014



WILLIAM H. ORRICK
United States District Judge

21