UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LING LA,<br><br>            Plaintiff,<br><br>     v.<br><br>SAN MATEO COUNTY TRANSIT DISTRICT, et al.,<br><br>            Defendants. | Case No. 14-cv-01768-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 36 |

## INTRODUCTION

Plaintiff Ling La was terminated from her job as an accountant for defendant San Mateo County Transit District ("SamTrans") after repeatedly complaining to coworkers, supervisors, and several outside authorities about accounting irregularities she suspected were taking place within SamTrans. She then filed this employment retaliation action against SamTrans and two individual defendants – Michael Scanlon, SamTrans's Chief Executive Officer, and Sheila Tioyao, her supervisor during most of her period of employment – for: (i) retaliation in violation of Cal. Labor Code § 1102.5(b); (ii) retaliation in violation of 42 U.S.C. § 1983 and the First Amendment; and (iii) deprivation of substantive due process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment; and (iv) retaliation in violation of Cal. Gov. Code § 12653, the whistleblower retaliation provision of the California False Claims Act.

Defendants move to dismiss La's Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that the Cal. Lab. Code § 1102.5(b) and Cal. Gov. Code § 12653 causes of action are barred by La's failure to allege compliance with the California Tort Claims Act. They are correct, and further amendment would be futile. Those causes of action are DISMISSED WITHOUT LEAVE TO AMEND. Scanlon and Tioyao contend that La has failed to allege sufficient facts to hold either of them liable under the section 1983

causes of action. That is also true, and those claims are DISMISSED WITH LEAVE TO AMEND. Because La adequately alleges that she spoke as a private citizen when making her complaints, the motion to dismiss the First Amendment retaliation claims against SamTrans is DENIED.

## BACKGROUND

### I. FACTUAL BACKGROUND

La's allegations are set out in detail in the September 16, 2014 order on SamTran's motion to dismiss the First Amended Complaint ("FAC"), so I have only briefly summarized them here. Where relevant, I have included more detailed explanations of La's allegations in the discussion section below.

La was hired by SamTrans as a Senior Accountant in May 2011. SAC ¶ 4. In February 2012, La was transferred from the Treasury Division to the General Ledger and Accounts Payable Division, at which point Tioyao, who was the manager of that division, became La's supervisor. SAC ¶ 9. Between November 2012 and July 2013, La repeatedly complained to Tiaoyao, other supervisors, and various outside entities about accounting irregularities she suspected were taking place within SamTrans. In March 2013, Tioyao gave La a negative performance review, a "Performance Improvement Plan," and a six month probation. SAC ¶ 29. On July 31, 2013, La received a Notice of Intent to Terminate. SAC ¶ 73. She alleges the Notice "was issued pursuant to SamTrans's policy and/or custom of terminating the employment of SamTrans employees who report suspected financial irregularities, fraud, waste, and abuse." SAC ¶ 74. Defendant Scanlon is SamTrans's Chief Executive Officer. SAC ¶ 8. The SAC does not allege that either Tioyao or Scanlon participated in the decision to terminate La.

The primary difference between the FAC and the SAC is that the SAC alleges with greater detail and clarity the particular regulations and statutes which La complained were being violated by the alleged accounting irregularities. The regulations and statutes include:

- 2 C.F.R. § 200.303. SAC ¶ 17.
- Cal. Pub. Con. Code §§ 20330-20331. SAC ¶ 36.
- Cal. Pub. Con. Code § 20207.6. SAC ¶ 37.

2

- 29 C.F.R. § 3.4.  SAC ¶ 45.
- 49 U.S.C. § 5325 and 49 C.F.R. § 18.36.  SAC ¶ 47-48.
- Cal. Gov. Code §§ 29120, 29121, and 29125.  SAC ¶ 67.

The SAC also includes new allegations regarding communications between La and SamTrans following her receipt of the July 31, 2013 Notice of Intent to Terminate.  *See* SAC ¶¶ 79-84.  The communications concern La's request for "information concerning the reasons for the Notice of Intent to Terminate," including "documentation supporting all discipline issued to Ms. La[,] email correspondence concerning the basis for Ms. La being placed on a Performance Improvement Plan[,] and email correspondence concerning why she is not being permitted to complete the Performance Improvement Plan."  SAC ¶ 79.  La eventually reviewed the requested documents at SamTrans's counsel's office on August 23, 2013.  SAC ¶ 84.

## II.     PROCEDURAL BACKGROUND

La filed her initial complaint on April 16, 2014.  Dkt. No. 1.  On June 9, 2014, SamTrans responded with a motion to dismiss under Rule 12(b)(6).  Dkt. No. 10.  Rather than oppose the motion, on July 8, 2014, La filed the FAC, alleging four causes of action:  (i) retaliation in violation of Cal. Labor Code § 1102.5(b); (ii) retaliation in violation of 42 U.S.C. § 1983 and the First Amendment; (iii) deprivation of substantive due process in violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments; and (iv) retaliation in violation of Cal. Gov. Code § 12653, the whistleblower retaliation provision of the California False Claims Act ("CFCA").  Dkt. No. 19.

SamTrans once again moved to dismiss under Rule 12(b)(6).  Dkt. No. 21.  On September 16, 2014, I issued an order granting in part and denying in part the motion.  Dkt. No. 33.  I dismissed the state law whistleblower claims on the ground that La had failed to adequately plead protected activity within the meaning of either Cal. Labor Code § 1102.5(b) or Cal. Gov. Gode § 12653.  *Id.* at 7-10, 18-20.  I gave La leave to amend both causes of action.  *Id.* at 21.  I also dismissed with prejudice La's claims under the Fifth Amendment on the ground that SamTrans is not part of the federal government.  *Id.* at 16.  I denied SamTrans's motion to dismiss La's section 1983 claims for First Amendment retaliation and deprivation of substantive due process in

1  violation of the Fourteenth Amendment. *Id.* at 10-18.

2  La filed the SAC on October 6, 2014. Dkt. No. 35. The SAC alleges the same four causes
of action as the FAC, minus any claims under the Fifth Amendment. SAC ¶¶ 89-138. The state
law whistleblower causes of action are alleged against only SamTrans, while the section 1983
causes of action are alleged against all defendants. *Id.* Defendants filed the instant motion on
October 20, 2014. Dkt. No. 36.[1] Although Scanlon and Tioyao did not join in SamTrans's prior
motions to dismiss, they do join in this one. This appears to be because Scanlon and Tioyao were
not served until after the FAC had been filed. *See* Mot. 6 (Dkt. No. 36). Pursuant to Local Rule
7-1(b), I found the motion suitable for resolution without oral argument and vacated the hearing
set for December 3, 2014.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether the complaint is sufficient to state a claim, the court accepts as true all factual allegations contained in the complaint. *Id.* However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez,* 735 F.3d 1060, 1076 (9th Cir. 2013).

---

[1] Defendants filed a request for judicial notice in conjunction with this motion. *See* Dkt. No. 37. Defendants' request for judicial notice of the joint case management statement submitted by the parties on September 3, 2013 is GRANTED. Defendants' request for judicial notice of excerpts from SamTrans's Personnel Policies and Procedures Manual is DENIED AS MOOT, as the excerpts are not relevant to resolution of defendants' motion to dismiss.

# DISCUSSION

## I. FIRST AND FOURTH CAUSES OF ACTION: STATE LAW WHISTLEBLOWER CLAIMS

Defendants contend that La's first and fourth causes of action under Cal. Gov. Code § 1102.5(b) and the CFCA's retaliation provision, Cal. Gov. Code § 12653, must be dismissed because La has not alleged compliance with the California Tort Claims Act ("CTCA"). Mot. 10-12; Reply 3-5 (Dkt. No. 43). I agree.

Under the CTCA, with limited exceptions not applicable here, "no suit for money or damages may be brought against a public entity . . . until a written claim . . . has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected." Cal. Gov. Code § 945.4. Failure to present a timely written claim to the relevant public entity "bars a plaintiff from filing a lawsuit against that entity." *City of Stockton v. Superior Court*, 42 Cal.4th 730, 738 (2007). Thus, in state and federal court alike, "[t]imely compliance with the claim filing requirements . . . must be pleaded in a complaint . . . to state a cause of action." *Konig v. State Bar of California*, No. 04-cv-02210-MJJ, 2004 WL 2091990, at *6 (N.D. Cal. Sept. 16, 2004) (internal quotation marks omitted); *see also, Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1151 (N.D. Cal. 2013) ("The requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in federal court.") (internal quotation marks omitted).

Cal. Gov. Code § 910 requires that the claim presented to the public entity include the following information:

(a) The name and post office address of the claimant.

(b) The post office address to which the person presenting the claim desires notices to be sent.

(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.

Cal. Gov. Code § 910.  Cal. Gov. Code § 910.2 provides that "[t]he claim shall be signed by the claimant or by some person on his behalf." Cal. Gov. Code § 910.2.  "[A] claim need not contain the detail and specificity required of a pleading;" however, the claim must "fairly describe what [the] entity is alleged to have done." *Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.*, 34 Cal.4th 441, 446, (2004) (internal quotation marks omitted).  This aligns with the CTCA's purpose, which is "not to prevent surprise, but to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal.4th 983, 991 (2012).

As to timing, where, as here, the claim "relat[es] to a cause of action for . . . injury to person," the claim must be presented to the public entity "not later than six months after the accrual of the cause of action." Cal. Gov. Code § 911.2.  "For the purpose of computing time limits [under the CTCA,] the date of the accrual of a cause of action . . . is the date upon which the cause of action would be deemed to have accrued within the meaning of the [applicable] statute of limitations." Cal. Gov. Code § 901.  The latest date on which the statute of limitations for La's state law whistleblower causes of action could have accrued is the date of her termination, September 23, 2013.  *See Shoemaker v. Myers*, 2 Cal. App. 4th 1407, 1427 (1992).[2]  Thus, to comply with the CTCA, La was required to submit a written claim to SamTrans by March 23, 2014, or, alternatively, to submit an application for leave to present a late claim by September 23, 2014.  *See* Cal. Gov. Code §§ 911.2, 911.4.  Defendants assert that because the SAC does not allege that La did either, the Cal. Gov. § 1102.5(b) and CFCA retaliation causes of action must be dismissed.

La concedes that the SAC does not allege that she submitted a written claim to SamTrans within the applicable time period.  Opp. 3-6 (Dkt. No. 42).  La asserts instead that she has satisfied the CTCA's claim filing requirements by pleading facts showing that she "substantially complied"

---

[2] Although the SAC does not identify the specific date on which La was terminated, the "Agreed-Upon Facts" section of the parties' September 3, 2014 joint case management statement states that SamTrans terminated La on September 23, 2013.  Dkt. No. 31 at 2.  I take this is a judicial admission.  *See Sethi v. Seagate U.S. LLC Grp. Disability Income Plan*, No. 11-cv-06188-WHA, 2012 WL 3834948, at *6 (N.D. Cal. Sept. 4, 2012) (holding that statement in joint case management statement constituted binding judicial admission).

with the Act. *Id.* Specifically, La points to various paragraphs in the SAC alleging that she (i) corresponded with SamTrans following her receipt of the July 31, 2013 Notice of Intent to Terminate and requested documentation of the basis for her termination; (ii) attended a meeting with SamTrans on August 28, 2013 "where whistleblower retaliation was specifically raised;" and (iii) filed a complaint with the California Labor Commissioner on October 17, 2013. *See* Opp. 5-6; SAC ¶¶ 79-85, 108.

The CTCA "is not designed to eliminate meritorious lawsuits or to snare the unwary when the [Act's] purpose has been satisfied. Thus, claims are not required to be technically perfect." *Perez v. Golden Empire Transit Dist.*, 209 Cal. App. 4th 1228, 1234 (2012) (internal citations omitted). "Substantial compliance" with the requirements of Cal. Gov. Code §§ 910 and 910.2 is generally enough. *Connelly v. Cnty. of Fresno*, 146 Cal. App. 4th 29, 38 (2006). In line with the CTCA's purpose, "the test for substantial compliance is whether the face of the claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it." *Id.* at 42.

La relies principally on *Phillips v. Desert Hospital District*, 49 Cal.3d 699 (1989) to urge that she substantially complied with the CTCA. *See* Opp. 3-6. In that case, the plaintiffs, Mr. and Mrs. Phillips, mailed to the defendant public hospital a signed letter stating that the plaintiffs "intend[ed] to commence an action" against the hospital on the basis of "the diagnosis, care, treatment, operation and related services rendered to [Mrs. Phillips] on or about September 12, 1983." *Phillips*, 49 Cal.3d at 703. The letter also stated that "Mr. Phillips will claim damages for loss of consortium and for his mental and emotional suffering resulting from the damages and disfigurement to his wife." *Id.* The California Supreme Court held that while the letter did not substantially comply with the CTCA, it nevertheless qualified as a "claim as presented" and therefore triggered the hospital's statutory duty – under Cal. Gov. Code §§ 910.8, 911, and 911.3(b) – to respond to defective claims. *Id.* at 707-09.[3] The court explained:

---

[3] Under Cal. Gov. Code §§ 910.8, 911, and 911.3(b), the filing of a claim which fails to "substantially comply" with Cal. Gov. Code §§ 910 or 910.2 "triggers a duty by the public entity to notify the potential claimant of the claim's insufficiency." *Green v. State Ctr. Cmty. Coll. Dist.*,

7

> A public entity's receipt of *written notice that a claim for monetary damages exists and that litigation may ensue* places upon the public entity the responsibility, and gives it the opportunity, to notify the potential plaintiff . . . of the defects that render the document insufficient under sections 910 and 910.2 and thus might hamper investigation and possible settlement of the claim. Such a written notice claiming monetary damages thereby satisfies the purposes of the claims act – to facilitate investigation of disputes and their settlement without trial if appropriate.

*Id.* at 709 (emphasis added). The court concluded that because the letter activated the hospital's statutory duty to notify the plaintiffs of the letter's insufficiencies, and the hospital had not done so, the hospital had "waived any defenses it may have otherwise asserted based on such insufficiencies." *Id.* at 711.

The other cases cited by La likewise involve written communications delivered to the appropriate public entity which clearly conveyed the message that "a claim for monetary damages exists and litigation may ensue." *Phillips*, 49 Cal.3d at 709. In *Alliance Financial v. City and County of San Francisco*, 64 Cal. App. 4th 635 (1998), the court held that a letter regarding a debt allegedly owed to the plaintiffs by the City qualified as a claim as presented where the letter stated: "We look forward to your confirmation of the date and time when [the debt] will be paid. I would be happy to meet . . . prior to filing an action for recovery." *Id.* at 647. The court observed that the letter "informs [the City] that the claim is ripe and that litigation can be expected if the matter is not resolved." *Id.* In *Wilson v. Tri-City Hospital District*, 221 Cal. App. 3d 441 (1990), the court found a claim as presented in a letter written by Wilson's attorney and sent to the defendant's attorney which stated: "I am most certainly going to be asking for substantial money on [Wilson's] behalf as a 'reasonable settlement' . . . Will the [defendant] waive any further discussions between us and administrative actions so I can file a lawsuit on Wilson's behalf? . . . Finally, will you accept service on behalf of your client?" *Id.* at 445. In *Foster v. McFadden*, 30 Cal. App. 3d 943 (1973), the plaintiff was injured when he was struck by a bulldozer operated by a

---

34 Cal. App. 4th 1348, 1354 (1995). The notice must state, "with particularity, the defects or omissions." *Id.* "If the public entity fails to send this notice, it waives any defenses as to the sufficiency of the claim based upon a defect or omission." *Id.* (emphasis omitted).

8

sanitation district employee. *Id.* at 945. The court held the plaintiff's attorney had submitted a claim as presented by sending the employee a letter "advising him of his client's name, the date and place of the accident and asking [the employee], if insured, to forward the letter to his insurance carrier and, if not insured, to contact the attorney at once and inform the attorney what he wished to do about the matter." *Id.* The letter closed with the expressed hope that the parties could avoid the necessity for "initiating formal proceedings." *Id.* at 945. The attorney also sent a copy of the letter to the district. *Id.* at 946.

These cases do not help La. The key question under these cases is not whether La substantially complied with the CTCA, but whether she submitted a claim as presented – i.e., a claim sufficient to activate the CTCA's notice and defense-waiver provisions. *See Phillips*, 49 Cal. 3d at 707 ("[T]he [CTCA's] notice and defense-waiver provisions . . . use the phrase 'claim as presented' to identify a 'claim' which is defective due to its failure to comply substantially with sections 910 and 910.2 and . . . it is only a 'claim as presented that fails to comply substantially' that triggers sections 910.8, 911 and 911.3.") (internal modifications and emphasis omitted). She did not.

La's correspondence with SamTrans concerned her request for documentation of the reasons for the July 31, 2013 Notice of Intent to Terminate; it did not concern her potential legal claims against defendants. *See* SAC ¶¶ 79-84. The SAC alleges that on August 7, 2013, La "requested information concerning the reasons for the Notice of Intent to Terminate," including "documentation supporting all discipline issued to Ms. La[,] email correspondence concerning the basis for Ms. La being placed on a Performance Improvement Plan[,] and email correspondence concerning why she is not being permitted to complete the Performance Improvement Plan." SAC ¶ 79. The next day, a SamTrans attorney responded, stating that La was "entitled to documents regarding the tentative decision to terminate her employment," and rescheduling a meeting with La from August 12, 2013 to August 16, 2013. SAC ¶ 80. The attorney also stated that if La wished to review the other documents she had requested, the meeting would need to be pushed even further back, to August 28, 2013. SAC ¶ 81. On August 12, 2013, La "again requested access to the documents . . . supporting the discipline issued to [her]." SAC ¶ 82. SamTrans responded by

1  rescheduling the meeting from August 16, 2013 to August 28, 2013, and on August 23, 2013,
2  SamTrans "informed [La] that the documents supporting her discipline were available for review
3  on August 26, 2013 at [SamTrans's] counsel's office." SAC ¶¶ 83-84.  The SAC states that La
4  reviewed the documents at that time.  SAC ¶ 84.

5        This is the extent of the correspondence on which La bases her assertion that she has
6  alleged substantial compliance with the CTCA.  At no point during the course of this
7  correspondence did La convey to SamTrans, either explicitly or implicitly, that "a claim for
8  monetary damages exists and that litigation may ensue," *Phillips*, 49 Cal.3d at 709, or that a "claim
9  is ripe and that litigation can be expected if the matter is not resolved," *Alliance*, 64 Cal. App. 4th
10  at 647.  Rather, the correspondence was focused exclusively on La's requests for documents and
11  the timing of the meeting between La and SamTrans. *See* SAC ¶¶ 79-84.  To constitute a claim as
12  presented, "the content of the correspondence to the recipient entity must at least be of such nature
13  as to make it readily discernible by the entity that the intended purpose thereof is to convey the
14  assertion of a compensable claim against the entity which, if not otherwise satisfied, will result in
15  litigation." *Green*, 34 Cal. App. 4th at 1358.  Viewed in the light most favorable to La, her
16  correspondence with SamTrans did not satisfy this standard.  Likewise, because La's requests for
17  documents and her statements regarding the meeting's timing did not "provide [SamTrans] with
18  sufficient information to enable it to adequately investigate [La's] claims and to settle them, if
19  appropriate, without the expense of litigation," the correspondence did not rise to the level of
20  substantially complying with the CTCA.  *DiCampli-Mintz*, 55 Cal.4th at 991; *see also, Connelly*,
21  146 Cal. App. 4th at 38.

22        The other allegations La cites as demonstrating substantial compliance are also insufficient.
23  The allegation regarding the August 28, 2013 meeting fails because the SAC says nothing about
24  what was discussed at the meeting. *See* SAC ¶ 85.  Although La asserts in her opposition that
25  "whistleblower retaliation was specifically raised," Opp. 5-6, there is no corresponding allegation
26  in the SAC.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal
27  sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited
28  to the complaint.") (internal quotation marks and modifications omitted); *Car Carriers, Inc. v.*

*Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, Cal. Gov. Code § 945.4 requires the presentation of a "written claim" to the public entity, and there is no authority for the proposition that an oral claim may either substantially comply with the CTCA or constitute a claim as presented. *See Jefferson v. City of Fremont*, No. 12-cv-00926-EMC, 2013 WL 1747917, at *10 (N.D. Cal. Apr. 23, 2013) (holding that plaintiff's allegations of "face-to-face meetings" with City representatives could not satisfy the CTCA where plaintiff "has not submitted any authority establishing that there can be substantial compliance via an oral claim at a meeting"); *Wilhite v. City of Bakersfield*, No. 11-cv-01692, 2012 WL 273088, at *7 (E.D. Cal. Jan. 30, 2012) ("[T]he [CTCA] requires that a written claim be presented to the public entity. It goes without saying that a telephone conversation is not a written claim.").

        The allegation regarding the complaint filed with the California Labor Commissioner fails for a different reason. The California Supreme Court has made clear that a claim must be presented in strict compliance with Cal. Gov. Code § 915, which requires that a claim to a public entity be presented by being (i) "deliver[ed] to the clerk, secretary, or auditor" of the public entity, Cal. Gov. Code § 915(a)(1); (ii) "mail[ed] to the clerk, secretary, auditor, or to the [public entity's] governing body at its principal office," Cal. Gov. Code § 915(a)(2); or, if the claim is initially misdirected, (iii) "actually received by the clerk, secretary, auditor or board," Cal. Gov. Code § 915(e)(1). *See DiCampli-Mintz*, 55 Cal.4th at 991-92 ("It is uncontested that the claim was never delivered or mailed to the clerk, secretary or auditor as required by section 915(a). Likewise, the clerk, secretary, auditor or board never actually received the claim . . . Nevertheless, the Court of Appeal held that there was substantial compliance. This was error.") (internal quotation marks omitted); *see also, Jefferson*, 2013 WL 1747917, at *9 ("[A]fter *DiCampli-Mintz,* either there must be strict compliance with section 915(a) or the only way to substantially comply with section 915(a) is if there is actual receipt of the misdirected claim by one of the statutorily designated recipients.") (internal quotation marks omitted). La's allegation that she filed a complaint not with SamTrans or any employee thereof, but with the California Labor Commissioner, does not satisfy this requirement. *See also, LaCava v. Merced Irr. Dist.*, No 10-cv-00853, 2012 WL 913697, at

*14 (E.D. Cal. Mar. 16, 2012) (holding that plaintiff's submission of a complaint regarding retaliation in violation of section 1102.5 to a state agency was not "a substitute for presenting a . . . claim under [the CTCA]"); *Imel v. Cnty. of El Dorado*, No. 10-cv-00688, 2010 WL 2606493, at *4 (E.D. Cal. June 28, 2010) ("[Plaintiff's claim] was not submitted to the public entity against whom plaintiff filed suit, the County. Rather, it appears to [have been] submitted to the State. As such, plaintiff has failed to plead compliance with the CTCA.").

The rest of La's arguments are unconvincing. La contends that because she requests an injunction against SamTrans, the CTCA's claim filing requirements do not apply. Opp. 3 n.1. It is true that Cal. Gov. Code § 945.4 applies only to "suit[s] for money or damages" and not to claims for injunctive or declaratory relief. Cal. Gov. Code § 945.4; *see also, Snipes v. City of Bakersfield*, 145 Cal. App. 3d 861, 869-71 (1983) (noting that the CTCA's "language exempts actions seeking specific relief other than money or damages, such as injunctive or declaratory relief"). This general rule "has no application, however, where a petition for extraordinary relief is merely incidental or ancillary to a prayer for damages," and the "primary purpose of [the] claims is pecuniary in nature." *Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 147 Cal. App. 3d 1071, 1081-82 (1983). While La states in her prayer for relief that she seeks "an injunction against . . . SamTrans prohibiting the continued exercise of policies violating applicable law," this relief is merely ancillary to La's request for compensatory and punitive damages. *See* SAC 21-22.

La asserts that under *Snipes v. City of Bakersfield*, the CTCA's claim filing requirements are inapplicable to actions to enforce Cal. Lab. Code § 1102.5(b) and Cal. Gov. Code § 12653. Opp. 3 n.2 (citing *Snipes,* 145 Cal. App. 3d 861). But *Snipes* held only that the CTCA does not apply to actions brought under the California Fair Employment and Housing Act (FEHA). *See* 145 Cal. App. 3d at 865 ("[T]he purposes and procedures of the FEHA demonstrate a legislative intent that actions against governmental entities brought under the FEHA are to be excepted from the general requirements of the [CTCA]."). *Snipes* says nothing about Cal. Gov. Code § 1102.5(b) or Cal. Gov. Code § 12653, and La offers no authority to support her position that these statutes are excepted from the CTCA's claim filing requirements. Accordingly, I decline to except them here. *See also, Olson v. Palm Drive Hosp.*, No. 11-cv-04606-MMC, 2012 WL 440559, at *2-4 (N.D.

Cal. Feb. 10, 2012) (dismissing Cal. Lab. Code § 1102.5(b) cause of action for failure to comply with the CTCA); *Conwright v. City of Oakland*, No. 09-cv-02572-TEH, 2010 WL 3515741, at *5 (N.D. Cal. Sept. 8, 2010) (same); *Chappell v. City of Pittsburg*, No. 04–cv-04400-SI, 2005 WL 756617, at *5-7 (N.D. Cal. Mar. 25, 2005) (dismissing CFCA retaliation cause of action for failure to comply with the CTCA).

Finally, La's reliance on *Lloyd v. County of Los Angeles*, 172 Cal. App. 4th 320 (2009), is misplaced. *See* Opp. 3 n.3. The court in that case held that the plaintiff's common law tort claims against the County were barred by Cal. Gov. Code § 815 which, in the words of the court, "abolishes common law tort liability for public entities." 172 Cal. App. 4th at 328-330. The case does not address the CTCA's claim presentation requirements at all, in particular as applied to statutory claims like those brought under Cal. Lab. Code § 1102.5(b) and Cal. Gov. Code § 12653.

Given the allegations in La's Second Amended Complaint and the arguments in her opposition to the motion to dismiss, it is clear that she cannot satisfy the requirements of the CTCA. Defendants' motion to dismiss the first and fourth causes of action, for violations of Cal. Lab. Code § 1102.5 and Cal. Gov. Code § 12653, is GRANTED WITHOUT LEAVE TO AMEND.

## II. SECOND CAUSE OF ACTION: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

"The First Amendment shields public employees from employment retaliation for their protected speech activities." *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013). This right is not absolute; courts must "seek a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 142 (1983) (internal quotation marks and modifications omitted).

The Ninth Circuit strikes this balance by applying a five-factor test:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5)

13

whether the state would have taken the adverse employment action even absent the protected speech.

*Hagen*, 736 F.3d at 1257 (internal quotation marks omitted). Each of these factors is necessary, in that failure to satisfy any one of them is "fatal to the plaintiff's case." *Dahlia*, 735 F.3d at 1067 n.4.

Defendants contend that the SAC fails to state a claim for First Amendment retaliation because it does not adequately allege the second factor, i.e., that La's speech was made in her capacity as a private citizen and not as part of her job duties as a public employee. Mot. 20-22. Defendants point out that under the First Amendment retaliation cause of action, the sole allegation concerning the capacity in which La made her complaints states only that La's "speech was made as a private citizen because she had no official duty to speak against mismanagement and wrongdoing within SamTrans," and that her "speech was [not] part of the tasks she was paid to perform." SAC ¶ 112. Defendants argue this allegation "is simply a recitation of the law" and is too devoid of specific facts to support La's claims. Mot. 21.

La does not defend the adequacy of SAC ¶ 112. Opp. 7-9. La asserts instead that the following allegations, which the SAC incorporates into the First Amendment retaliation cause of action through SAC ¶ 110, are sufficient to show that she spoke as a private citizen:

> (i) On or around July 2, 2013, La contacted the San Mateo County Whistleblowing Hotline, which transferred her to the office of County Supervisor Carol Groom. SAC ¶ 59. La "duly reported the fraud" to Groom's office. *Id.*
>
> (ii) On July 3, 2013, La contacted the San Mateo County District Attorney's Office to file an official complaint. SAC ¶ 61. She provided information regarding the "questionable invoices" and "the extreme excesses in [SamTrans's] contingency fund." *Id.*
>
> (iii) Also on July 3, 2013, La approached Vicki Nguyen, a reporter for NBC Bay Area News, "to expose the mismanagement and wrongdoings of SamTrans." *Id.*
>
> (iv) On or around July 6, 2013, La sent an email to the San Mateo County Controller's Office, two presidents of the San Mateo County Board of Supervisors, and a civil grand jury "complaining about [the County's] whistleblowing process." SAC ¶ 69.

*See* Opp. 8 n.5.

I agree with La that these allegations plausibly demonstrate that, at least in these four instances, her speech was made in her capacity as a private citizen. A public employee speaks as a private citizen where she has "no official duty" to make the statements at issue – that is, where the statements were "not the product of performing the tasks the employee [is] paid to perform." *Eng v. Cooley,* 552 F.3d 1062, 1071 (9th Cir. 2009) (internal quotation marks omitted). Determining the scope of a public employee's official duties, and whether the employee's speech falls within them, is a "practical, fact-specific inquiry." *Dahlia*, 735 F.3d at 1071 (internal quotation marks omitted). The Ninth Circuit has identified a non-exhaustive list of three "guiding principles" to follow in making this determination. *Id.* at 1074-75. First, "whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties. When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties." *Id*. at 1074. Second, "the subject matter of the communication is . . . highly relevant." *Id*. at 1074-75. A public employee's "routine report, pursuant to normal departmental procedure, about a particular incident or occurrence, . . . is typically within his job duties." *Id*. at 1075. "By contrast, if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee." *Id.* Third, "when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties." *Id.*

In light of these guiding principles, La has alleged facts that give rise to the plausible inference that she spoke as a private citizen. Each of the communications identified by La was made to an entity outside of SamTrans; La complained to the San Mateo County Whistleblowing Hotline, County Supervisor Carol Groom, the San Mateo County District Attorney's Office, an NBC Bay Area News reporter, the San Mateo County Controller's Officer, two presidents of the Board of Supervisors, and a civil grand jury. SAC ¶¶ 59, 61, 69. It is more than plausible to infer that these communications were made "outside of [La's] chain of command." *Dahlia*, 735 F.3d at 1074. Defendants accurately point out that La has not specifically alleged that her complaints to

the outside entities were beyond the scope of her official duties. Mot. 21-22. But La is not required to make such an allegation to state a claim for First Amendment retaliation. At this point in the proceedings, where there is no allegation regarding whether the complaints were part of La's official duties, and it is plausible to infer that she spoke as a private citizen, the court "must resolve the ambiguity in [La's] favor." *Dahlia*, 735 F.3d at 1077; *see also, Preston v. City of Oakland*, No. 14-cv-02022-NC, 2014 WL 3752064, at *4 (N.D. Cal. July 29, 2014) (rejecting argument that "if the Court cannot definitively say whether [plaintiff's] statements are within her job duties, the Court must dismiss [plaintiff's] complaint because she has failed to plead her job duties in sufficient detail to state a claim for retaliation;" holding that "the Court need only determine that [plaintiff's] pleadings support the reasonable inference that her actions were outside her official duties"). That La plausibly complained "outside of [her] chain of command" weighs heavily in her favor. *Dahlia*, 735 F.3d at 1074; *see also, Freitag v. Ayers*, 468 F.3d 528, 545-46 (9th Cir. 2006) (holding that correctional officer spoke as a public employee when she made internal reports of the prison's failure to respond to inmate misconduct, but "acted as a citizen" when she communicated the same concerns to a state senator and a state agency).

La has also plausibly alleged that the complaints she made to outside entities regarded not "particular incident[s] or occurrence[s]," but "broad concerns about corruption [and] systemic abuse" within SamTrans. *Dahlia*, 735 F.3d at 1075. While the allegations regarding the content of her complaints are not a model of specificity, viewed in the light most favorable to La, the allegations are sufficiently detailed to indicate that she was voicing general concerns about "fraud" and "mismanagement" at SamTrans. *See* SAC ¶¶ 59, 61, 69. In this way, the subject matter of La's complaints adds further support to the conclusion that her speech was made in her capacity as a private citizen and not as a public employee. *See Dahlia*, 735 F.3d at 1075.

Accordingly, defendants' motion to dismiss the First Amendment retaliation cause of action on the ground that La has not adequately alleged that she spoke as a private citizen is DENIED.

16

### III. LIABILITY OF THE INDIVIDUAL DEFENDANTS UNDER THE SECOND AND THIRD CAUSES OF ACTION FOR FIRST AMENDMENT RETALIATION AND DEPRIVATION OF SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983)

"Vicarious liability may not be imposed on a supervisor for the acts of lower officials in a section 1983 action." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013). A supervisor may only be held liable under section 1983 upon a showing of either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *see also, Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant . . . A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). The requisite causal connection may be proven by (i) the supervisor's "own culpable action or inaction in the training, supervision, or control of subordinates;" (ii) his or her "acquiescence in the constitutional deprivation of which a complaint is made;" or (iii) "conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Defendants assert that La has failed to allege sufficient facts to support her section 1983 claims against Scanlon and Tioyao. La's defense of those claims is half-hearted at best. She recites the general rule for supervisory liability under section 1983, asserts without explanation that "[t]he SAC . . . sufficiently pleads such facts," and cites to a series of paragraphs in the SAC. Opp. 9-10. None of the cited allegations, however, support a plausible inference of liability against either of the individual defendants.

La points to the following allegations regarding Scanlon:

(i) On June 14, 2013, La notified Scanlon of "the fraud." SAC ¶ 54. Scanlon responded three days later with an email advising La to continue speaking with SamTrans's Human Resources Department about her concerns. SAC ¶ 55.

(ii) Despite La's "repeated attempts to notify . . . Scanlon of fraudulent conduct within Sam Trans, [La] was consistently dismissed or told no investigative action would be pursued." SAC ¶ 101.

(iii) "Scanlon . . . did intend to retaliate against plaintiff for her exercise of rights protected under [Cal. Lab. Code § 1102.5] and cause plaintiff to suffer severe emotional distress." SAC ¶ 105.

(iv) "Scanlon . . . committed the abusive acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intent of injuring plaintiff and from an improper and evil motive, amounting to malice, and in conscious disregard for plaintiff's rights as an employee." SAC ¶ 107.

Viewed in the light most favorable to La, these allegations do not plausibly demonstrate either Scanlon's personal involvement in La's alleged constitutional injuries or a sufficient causal connection between those injuries and Scanlon's conduct. The only factual allegation regarding Scanlon states that, upon learning of La's complaints, he advised her to continue speaking with the Human Resources Department. SAC ¶ 55. Standing alone, this fact is not enough to implicate Scanlon in a violation of La's First or Fourteenth Amendment rights. There is no indication in the SAC of any connection between La's communications with Scanlon and the Notice of Intent to Terminate she received approximately six weeks later or any other allegedly adverse employment action taken against her. The mere fact that on one occasion Scanlon advised La to continue speaking with the Human Resources Department, instead of responding more enthusiastically to her complaint, is an insufficient basis from which to infer that Scanlon inadequately trained, supervised, or controlled his subordinates, acquiesced in a constitutional deprivation, or exhibited a reckless or callous indifference for La's constitutional rights. This is especially so given that the SAC does not reveal what information La communicated to Scanlon, except to state that she notified him of "the fraud." SAC ¶ 54.

The other allegations regarding Scanlon are likewise inadequate. La's reference to "repeated attempts to notify . . . Scanlon" is unsupported by the rest of the allegations in the SAC, which refer only to the June 14, 2013 communication with Scanlon discussed in the preceding paragraph and no other. The allegations in SAC ¶¶ 105 and 107 are vague, conclusory, and, notably, included not in the general allegations or under either of the section 1983 causes of action, but under the Cal. Lab. Code § 1102.5(b) cause of action. La appears to have highlighted these paragraphs in an attempt to cite to any paragraph in the SAC she could find with Scanlon or Tioyao's name in it.

As to Tioyao, La points to the following allegations:

(i) After Glenda Vierra, another SamTrans employee, reported to Tioyao that La had approved an invoice which short-paid a $15.00 freight charge, La sent an email to Vierra, Tioyao, and another individual requesting that Vierra "stop defaming [her] in the workplace." SAC ¶¶ 21-22. Tioyao subsequently issued La a counseling memo reprimanding La for using an "inappropriate tone" with coworkers. SAC ¶ 23.

(ii) After Tioyao asked La to categorize an expense from fiscal year 2013 as an expense from fiscal year 2011, La sent Tioyao an email informing her that mischaracterizing the expense was "wrong" and in violation of GAAP. SAC ¶¶ 25-27. Tioyao subsequently gave La a negative performance review, a "Performance Improvement Plan," and a six-month probation. SAC ¶ 29.

(iii) "Tioyao . . . acted, in various capacities, as [a] duly appointed agen[t] . . . on behalf of SamTrans under color of state law." SAC ¶ 93.

(iv) "Scanlon . . . did intend to retaliate against plaintiff for her exercise of rights protected under [Cal. Lab. Code § 1102.5] and cause plaintiff to suffer severe emotional distress." SAC ¶ 105.

The allegations in (i) and (ii) come closest to stating a claim against Tioyao, on the ground that she was personally involved in First Amendment retaliation. The allegations fall short because La concedes in her discussion of her First Amendment retaliation cause of action that the only complaints she made that constitute protected speech were those communicated to outside entities, not those made within SamTrans. *See* Opp. 7-9. Even if La had not made this concession, she offers no basis for concluding that complaints about Vierra's allegedly defamatory statements and Tiayao's request that La mischaracterize an expense, both of which were made to La's supervisor, qualify as protected speech. *See Dhalia,* at 735 F.3d at 1074-75 ("guiding principles" in determining whether a public employee spoke as a private citizen include "whether or not the employee confined his communications to his chain of command" and whether the employee was speaking about "a particular incident or occurrence" or "broad concerns about corruption or systemic abuse"); *see also, Hagen,* 736 F.3d at 1259 ("That [plaintiff] raised his concerns . . . internally and within the chain of command cements our conclusion that his comments were made as a public employee, and not as a private citizen."). Finally, the allegations in (iii) and (iv) are vague, conclusory, and boilerplate, and they fall far short of raising a plausible inference of

19

supervisory liability. *See Ashcroft,* 556 U.S. at 678-79.

Defendants' motion to dismiss the claims against Scanlon and Tioyao in the second and third causes of action is GRANTED WITH LEAVE TO AMEND.

## CONCLUSION

Because of La's failure to comply with the CTCA, the first and fourth causes of action are DISMISSED WITHOUT LEAVE TO AMEND. The second and third causes of action are DISMISSED against defendants Scanlon and Tioyao WITH LEAVE TO AMEND. Defendant SamTrans's motion to dismiss the second cause of action is DENIED. La shall file an amended complaint, if she wishes, within 20 days of the date of this Order.

**IT IS SO ORDERED**.

Dated: November 25, 2014



WILLIAM H. ORRICK
United States District Judge